# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCE MOJTA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br>ENVERIC BIOSCIENCES, INC., DAVID JOHNSON, GEORGE KEGLER, DOUGLAS LIND, SOL MAYER, AND MARCUS SCHABACKER,<br><br><br>　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vince Mojta ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Enveric Biosciences, Inc. ("Enveric" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Enveric and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Enveric and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and MagicMed Industries, Inc. ("MagicMed").

2. On May 24, 2021, the Company entered into an Amalgamation Agreement (the "Amalgamation Agreement") with MagicMed. The Amalgamation Agreement provides for the amalgamation of 1306436 B.C. Ltd., ("Purchaser"), a wholly-owned subsidiary of Enveric, with MagicMed, such that upon the completion of the Proposed Transaction the amalgamated corporation ("AmalCo") will be an indirect wholly-owned subsidiary of Enveric. Pursuant to the terms of the Amalgamation Agreement each shareholder of MagicMed will have their shares converted into AmalCo redeemable preferred shares, which immediately following the Amalgamation will be redeemed for 0.000001 of an Enveric Share. Following such redemption, each shareholder of MagicMed will be entitled to receive additional Enveric shares equal to the product of 0.2658 (the "Exchange Ratio") multiplied by the number of MagicMed Shares held by each such shareholder (the "Merger Consideration").

3. On August 4, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Enveric and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule

14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Enveric shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Enveric shares.

9. Defendant Enveric is incorporated under the laws of Delaware and has its principal executive offices located at 4851 Tamiami Trail N, Suite 200, Naples, Florida 34103. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ENVB."

10. Defendant David Johnson ("Johnson") is and has been the Chairman of the Board and Chief Executive Officer ("CEO") of Enveric at all times during the relevant time period.

11. Defendant George Kegler ("Kegler") is and has been a Enveric director at all times during the relevant time period.

12. Defendant Douglas Lind ("Lind") is and has been a Enveric director at all times during the relevant time period.

13. Defendant Sol Mayer ("Mayer") is and has been a Enveric director at all times during the relevant time period.

14. Defendant Marcus Schabacker ("Schabacker") is and has been a Enveric director at all times during the relevant time period.

15. Defendants Johnson, Kegler, Lind, Mayer, and Schabacker are collectively referred to herein as the "Individual Defendants."

16. The Individual Defendants, along with Defendant Enveric, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17. Enveric is a patient-first biotechnology company developing rigorously tested, novel cannabinoid medicines to improve quality of life for cancer patients. Initial indications include radiodermatitis, a common and often severe side effect of radiation therapy, and chemotherapy-induced neuropathy.

### The Company Announces the Proposed Transaction

18. On May 24, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

NAPLES, Fla., May 24, 2021 /PRNewswire/ -- Enveric Biosciences (NASDAQ: ENVB) ("Enveric" or the "Company"), a patient-first biotechnology company developing novel cannabinoid medicines to improve quality of life for cancer patients, today announced that it has entered into a definitive agreement to acquire MagicMed Industries Inc. ("MagicMed"), a privately-held biotechnology company focused on creating a library of novel derivative psychedelic molecules such as psilocybin, N,N-dimethyltryptamine (DMT) and other molecular derivatives with applications across multiple indications, in an all-stock transaction.

Through its extensive R&D capabilities at the state-of-the-art facility at the University of Calgary, MagicMed has focused on the discovery and early development of novel drug candidates, structurally related to psychedelics with vastly improved pharmaceutical characteristics and commercial potential for the treatment of neurological and psychological indications. The Psybrary™ is MagicMed's library of novel psychedelic derivatives developed through the combination of synthetic biology and traditional chemistry techniques. MagicMed has 13 patent applications filed for derivatives of psilocybin and DMT, 2 patent applications filed for derivatives of mescaline and MDMA with further intellectual property protection for mescaline, MDMA, ibogaine and LSD in process.

The acquisition of MagicMed will expand and complement Enveric's current pipeline of naturally occurring compounds, which is primarily focused on cannabinoids, to now include a robust portfolio of psychedelic-derived molecules. Enveric intends to continue to develop patient-centric support care therapies in oncology and central nervous system (CNS) indications. Upon closing, Enveric intends to commence drug discovery and development for treatment of cancer-related Post Traumatic Stress Disorder (PTSD) patients who are currently in treatment for cancer and those who are in remission. It is anticipated that the PTSD drug development program holds the potential to be expanded in the future beyond cancer-related applications to include other patient populations, such as military veterans.

"Our proposed acquisition of MagicMed underscores the core fundamental mission of Enveric to form a drug discovery and clinical stage biotechnology company with a focus on bringing forward nature-originated therapies to improve the standard of care and serve unmet needs in oncology and CNS indications," said David Johnson, Chairman and CEO of Enveric Biosciences. "Psychedelics and cannabinoids, in our opinion, have extensive patient benefits for the mind and body. We welcome MagicMed's world class research and development team led by Dr. Joseph Tucker, who not only have experience in psychedelic drug discovery, but also research experience in cannabinoids, as well. Patients who are currently being treated for cancer or are in remission are forced to face debilitating physical and mental side effects with very few treatment options available to alleviate their pain. PTSD, for example, is a significant unmet need

for this patient population. Together, with the MagicMed team, following the closing of the acquisition, we plan to commence the discovery and development of psychedelics-derived therapies."

Once closing is complete, Dr. Joseph Tucker will be appointed Chief Executive Officer of the Company and David Johnson, current Chief Executive Officer and Chairman, will be appointed Executive Chairman.

Dr. Joseph Tucker is a seasoned executive who has built several publicly traded biotechnology companies. Dr. Tucker was a founder and chief executive officer of Stem Cell Therapeutics, which was acquired by Trillium Therapeutics in 2013. Dr. Tucker has also held the position of co-founder and CEO of Epimeron Inc., a University of Calgary start-up acquired in the creation of Willow Biosciences Inc. At Willow, Dr. Tucker served as Executive Chairman and COO. Prior to founding these companies, Dr. Tucker was a healthcare analyst with two investment banks and has also worked in technology commercialization for a university technology transfer office. Dr. Tucker received his Ph.D. in Biochemistry and Molecular Biology from the University of Calgary.

"Our mission at MagicMed has always been focused on unlocking the full potential of psychedelic-derived medicines for the treatment of neurological and psychological indications," added Dr. Joseph Tucker, Chief Executive Officer of MagicMed. "Complementing our R&D capabilities, working together with Enveric will allow us to leverage the company's clinical team, all of whom are focused on advancing our extensive pipeline of molecules through the clinic to help serve the millions of patients who are suffering with mental health issues around the globe. Through this acquisition - in the best interest of each of our respective teams - we have bolstered our pipeline, bringing together a seasoned team of experts with the leadership skills and knowledge that is crucial to creating a platform that aims to address large unmet total addressable markets (TAM)."

The transaction is structured as an amalgamation under the *Business Corporations Act* (British Columbia). At the closing, a recently formed subsidiary of Enveric will amalgamate with MagicMed, with the resulting corporation being an indirect wholly owned subsidiary of Enveric. Under the terms of the amalgamation agreement and other related agreements, Enveric will issue the shareholders of MagicMed an aggregate of 9,946,969 shares of common stock of Enveric, as well as warrants, options, and restricted stock units to acquire an additional 9,039,882 shares of common stock of Enveric. The current Enveric shareholders will own approximately 63.4% of the combined company's common stock, as calculated on a fully diluted basis, and current MagicMed shareholders will own approximately 36.6% of the combined company's common stock, as calculated on a fully diluted basis. The agreement is subject to customary closing conditions and the approval of Enveric's and MagicMed's shareholders and is expected to close during the second half of 2021. Additionally, as part of the closing of the transaction,

Enveric will receive approximately $4 million (CAD) in cash from the MagicMed Treasury.

David Johnson and Dr. Joseph Tucker will host a conference call to discuss the transaction today, May 24th at 8:30 a.m. ET.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

19. On August 4, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

21. The Registration Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

22. The Registration Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

23. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

7

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

24. The Registration Statement fails to disclose any financial projections prepared by the Company's management in connection with the Proposed Transaction. Any such projections should be disclosed to the Company's shareholders.

25. In addition, to the extent management's projections contain non-GAAP financial metrics, any supplemental disclosure should include a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Gemini's Financial Opinion**

28. The Registration Statement contains the financial analyses and opinion of Gemini Valuation Services, LLC ("Gemini") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. Specifically, Gemini notes that in connection with preparing its opinion, they performed a variety of financial analyses, however Gemini disclosed that the analyses they included in the Registration Statement were not all the analyses conducted by Gemini in preparing its opinion.

30. The Registration Statement must disclose the other financial analyses conducted by Gemini as without these analyses, shareholders have an incomplete picture as to how Gemini arrived at its conclusion. Reviewing only some of the analyses could create a misleading view for the Company shareholders thus impacting their ability to make a fully informed vote on the Proposed Transaction.

31. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

32. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

38. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

39. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Amalgamation Agreement and the preparation of the Company's financial projections.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

# COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Enveric within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Enveric, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

47. In addition, as set forth in the Registration Statement at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Amalgamation Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 2, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*